OPINION
Appellant, David Lonsway, appeals from a judgment of the Lake County Court of Common Pleas, Domestic Relations Division, which awarded certain spousal support to appellee, his former wife, Karen E. Lonsway.
The facts pertinent to this appeal are as follows. In 1965, appellant and appellee were married in Willoughby, Ohio. Three children were born as issue of the marriage, all of whom are adults and emancipated. On March 13, 1997, appellant filed a complaint for divorce, and on April 16, 1997, appellee filed an answer and a counterclaim for divorce. Appellant filed a reply to appellee's counterclaim on April 22, 1997.
A few days after filing her answer and counterclaim for divorce, on April 22, 1997, appellee filed a "Motion For PendenteLite Spousal Support." In her motion, appellee alleged that she was employed as a secretary with income of $22,260 per year. She further alleged that appellant was employed as a sales manager with income of $113,000 per year. Appellee listed her various monthly expenses and, in relation to her income, requested spousal support in the amount of $2,622 per month.
On May 6, 1997, appellant responded to appellee's motion forpendente lite spousal support. While confirming appellee's yearly income, appellant responded that he made only $50,000 plus an unspecified amount of income from commissions or bonuses that he earned. He disputed some of appellee's alleged monthly expenses and asserted that appellee "inflated" several other expenses she incurred. He suggested $861 as a reasonable monthly spousal support award to appellee pending the parties' divorce. Ultimately, on May 16, 1997, the trial court issued a judgment ordering appellant to pay $1,200 per month plus poundage aspendente lite spousal support to appellee.
During the course of the divorce proceedings, the parties were able to resolve issues related to the division of their property. Both parties received marital assets in excess of $275,000. Appellee retained the marital home valued at $210,000. Appellant's assets included a 401(k) plan valued at nearly $175,000 as well as two rental properties with equity of nearly $65,000. The remainder of the marital property, consisting of furniture, jewelry, automobiles, a boat, and various monies located in investment and bank accounts, was also divided by agreement of the parties as later adopted by the trial court.
While the parties reached an agreement as to the division of property, they could not reach an agreement as to the issue of spousal support. The trial court held hearings to resolve these and other pending matters on April 8, 1998 and May 4, 1998.
At the hearing, appellee testified that she and appellant were married in 1965 and that, at that time, she was employed as a secretary with the City of Willoughby. Appellee continued to work until 1966 when she and appellant started to have children. She did not work outside of the home until 1980 when she accepted a part-time position as a sales clerk at a department store. Appellee remained at her part-time position at the department store until 1986 when she then began to work, off and on, at various clerical positions until 1992. In 1995, appellee accepted a clerical position from one of her former employers when problems began to develop in her marriage to appellant. Appellee's gross income totaled $22,041 for 1996 and $23,097.31 for 1997. She has health insurance available to her from her employer with a $7 per month co-payment, but relies on appellant's insurance for additional health costs not covered by her insurance. She will not be eligible under her present employer's pension plan for another three years.
Appellee testified that during the marriage she did not have to work and that she mainly sought employment to get out of the house and earn a little extra money. There is no question that during the course of the parties' over thirty-year marriage, appellee was primarily responsible for caring for the parties' home as well as their three children. She testified that the parties' standard of living was "very high" and described how appellant's substantial yearly income allowed them to purchase a number of luxuries and engage in a multitude of activities and hobbies.
At the time of the hearing, appellee was fifty-five years old and described herself as being in relatively good physical condition. She graduated from high school in 1960 and has no formal education other than a few computer classes that she has taken over the years at a local community college. She currently lives in the marital residence that consists of either three or four bedrooms and is situated on a 2.5-acre lot. The parties purchased the marital home from appellee's parents in 1977 and it is the same home that appellee lived in throughout her childhood. She testified that she could not meet her monthly expenses without receiving the $1,200 in spousal support from appellant and that, even with that level of support, she must still dip into her savings. She requested the court to grant her spousal support in the amount of $2,600 per month for a period of ten years.
Appellant is a high school graduate with one year of college without earning a degree. He is a sales manager for a company where he has worked for more than thirty years. He has a base salary of $50,000 and receives an additional amount in commission or bonuses based on the gross sales of the company from the previous year. While the bonus appellant receives each year is not guaranteed for subsequent years, appellant admitted that his annual salary has been in the $100,000 range for the past five of six years. Appellant reported earnings of $107,929 for 1995, $110,129.55 in 1996, and $96,160 in 1997. In addition, he had tax deferred 401(k) contributions of $8,580.40 in 1995, $9,500 in 1996, and $7,636.16 in 1997. He expected to make approximately $110,000 for 1998.
Appellant, who was also fifty-five years old at the date of the hearing, described his health as "real good" in between the five back operations he has had, the last in 1990. He feared that he would need further surgery on his back that could cause him to miss several weeks of work. However, for each of his past surgeries, appellant lost time from work and on each occasion continued to receive his full salary. He believed that he would continue to receive his full salary should he need additional medical attention for his persistent back troubles.
Appellant did not deny that appellee was the primary caretaker of their three children and basically maintained the household. He further acknowledged that the parties took vacations during their marriage, had various hobbies and interests, and dined out at least once per week. However, he denied that they had a very high standard of living and described their lifestyle as "slightly above average."
Appellant currently lives with friends and expects to purchase a home in the near future worth between $200,000 to $255,000. He had hoped to retire at age sixty-two, but anticipates working until age sixty-five in order to pay for his new home. Presently, he has no problem paying appellee $1,200 in support, but expects that that level of support will become a concern when he purchases a new home. He denied the ability to pay appellee support in the amount of $2,600 as she has requested. Instead, appellant proposed paying appellee a one-time, lump-sum spousal support payment of $40,000. He then suggested that appellee sell the marital home, buy a condominium in the $80,000 range, liquidate the remainder of her assets, and then invest the money in high yielding money market accounts. Appellant noted that, if properly invested, appellee would have more than enough money to satisfy her needs. Appellant attempted to introduce evidence of various mutual fund accounts that paid a yearly rate of return of approximately seventeen percent over the past five years. At this point, the trial court interjected and questioned the relevancy and admissibility of this evidence as well as ascertaining appellant's interest in liquidating all of his assets and moving into a condominium as he suggested for appellee. Appellant acknowledged that living in a condominium did not meet his lifestyle and that, prior to the parties' separation, there was no discussion between the parties of liquidating everything they owned for investment purposes.
In an "opinion" filed May 8, 1998, the trial court set forth in great detail the evidence presented at the hearings held on April 8, 1998 and May 4, 1998 as summarized above. Based on the evidence presented, the trial court determined that appellant should continue to pay $1,200 per month in spousal support to appellee. The trial court did not set forth a definite termination date for such support other than noting that this obligation would terminate at the death of either party, appellee's remarriage, or appellee's assumption of a status equivalent to marriage. The court indicated that it would retain continuing jurisdiction to modify its spousal support award should a change in circumstances occur. The trial court further indicated that it would piece together all of the issues relating to the parties' divorce at a later date.
On May 15, 1998, appellant filed a motion to clarify and/or motion for reconsideration from the trial court's spousal support determination. In his motion, appellant asserted that it was reasonable to assume that appellant may have to voluntarily reduce his work hours based on such factors as his "age, health, work-pressures, or a change in attitude by his employer." Appellant suggested that the trial court should anticipate these potential problems by placing a "cap" on the number of years he has to pay appellee spousal support or otherwise indicate that support would terminate when he voluntarily retires from his employment. Appellant further asserted that the trial court erred in dismissing the evidence he presented as to the anticipated "needs" of the parties in reaching its spousal support award.
By judgment entry filed June 1, 1998, the trial court denied appellant's motion to clarify/reconsider. The trial court acknowledged that it did not set forth a definite termination date for spousal support but indicated, based on the totality of the facts and circumstances of the case, that it was more appropriate to retain jurisdiction and modify spousal support should a change in the parties' circumstances occur. The trial court also rejected appellant's argument that it did not consider the parties' "needs" in deciding the proper level of spousal support to award appellee. The trial court reiterated that it considered each of the statutory factors as set forth in the Ohio Revised Code. The court further referred appellant to the portions of its prior decision that addressed each of these factors including its determination that the parties' anticipated needs were neither relevant nor equitable to the determination of spousal support in this case.
On June 5, 1998, appellant filed a notice of appeal, designated as Lake App. No. 98-L-130, from the trial court's decision of May 5, 1998. This court subsequently notified appellant that the trial court's judgment did not appear to be a final appealable order as the trial court had yet to issue its final entry of divorce. Our concerns regarding the premature filing of appellant's appeal were resolved when the trial court entered its final entry of divorce, filed July 1, 1998, which incorporated the parties' agreement as to property division as well as the court's award of spousal support. Nevertheless, appellant filed a second appeal from the trial court's final entry of divorce, designated as Lake App. No. 98-L-171. This court subsequently consolidated both appeals for all purposes and appellant now raises the following two assignments of error:
 "[1.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED AN ABUSE OF DISCRETION TO THE PREJUDICE OF THE APPELLANT BY ORDERING SPOUSAL SUPPORT WITH NO SPECIFIC TERMINATION DATE, SPECIFICALLY, THE DATE OF APPELLANT'S RETIREMENT.
 "[2.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED AN ABUSE OF DISCRETION TO THE PREJUDICE OF THE APPELLANT BY ORDERING SPOUSAL SUPPORT WITH NO DETERMINATION AS TO THE NEEDS OF APPELLEE."
 Before addressing appellant's assignments of error, we note the limited standard of review applied to these types of cases. Specifically, it is well recognized that a trial court has broad discretion in formulating an award of spousal support and that a reviewing court will not disturb said award in the absence of a finding that the trial court abused its discretion. See, e.g., Blakemore v. Blakemore (1983) 5 Ohio St.3d 217, 218. An abuse of discretion is more than a mere error of law; "`it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Id. at 219, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157.
In the first assignment of error, appellant contends that the trial court erred in failing to establish a definite termination date for his payment of spousal support. We disagree.
In Griffith v. Griffith (June 17, 1994), Geauga App. No. 93-G-1778, unreported, at 8, citing Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 69, this court recognized that, in most cases, an award of spousal support should provide a date for the termination of the award within a reasonable time and upon a certain date. The purpose of this general rule is the desire "`to place a definitive limit upon the parties' rights and responsibilities.'"Id., quoting Kunkle, 51 Ohio St.3d at 69. However, we also recognized that the establishment of a termination date for spousal support was not mandatory and recognized several exceptions to the general rule. For instance, it is entirely appropriate for the trial court to decline to impose a termination date when the establishment of such a date would impose an undue hardship on either party. We further recognized exceptions to the general rule in "`cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home.'"Id. at 9, quoting Kunkle, 51 Ohio St.3d at 69.
Appellant does not dispute that the general rule regarding a definite termination date for spousal support, as set forth inGriffith and Kunkle, is not mandatory. Appellant also does not attempt to dispute that this case involves a marriage of long duration, that his present income is significantly higher than that earned by appellee, and that based on appellee's age and formal education, it is not realistic to expect a significant increase in her future earnings. Instead, appellant notes that the trial court's spousal support award, as currently written, requires him to pay support beyond the date he desires to retire and beyond even the ten years of support requested by appellee. Consequently, when he is no longer working, and no longer receiving income in excess of $100,000 per year, he will still be required to pay appellee her $1,200 per month in support. Appellant asserts that the only way he will be able to continue making these support payments in the future is by tapping into monies he received in the parties' property division and that this situation amounts to "both a de facto and de jure" reservation of jurisdiction over the parties' property division. Appellant fears that the parties' nearly equitable division of marital property will become more and more inequitable as he continues to make support payments to appellee after he retires. Appellant's stated "fears" are necessarily dependant on two factors: 1) appellant's future inability to accumulate wealth based upon his current level of income; and 2) the trial court's refusal to modify appellee's spousal support if appellant adequately demonstrates that a change in circumstances has, in fact, occurred.
This court is not persuaded by appellant's argument that the trial court's failure to provide an express termination date for spousal support at the time of appellant's retirement was an abuse of discretion since the effect of the spousal support order was to provide appellee a portion of the retirement benefits from appellant's post divorce employment, thus, giving appellee an additional division of marital property not originally granted her in the proceedings.
Appellant fails to distinguish between assets retained in a division of marital property, as opposed to income that may be derived from such assets. At this juncture, it is, indeed, an exercise in speculation regarding what source or sources appellant will employ to honor his spousal support obligation. Even if his future pension income may be applied in part, or entirely, to the spousal support obligation, we conclude that this contingency does not result in an extra jurisdictional violation of appellant's rights with respect to the division of material assets between the parties. He still retains the vested contractual and intangible rights to his pension's asset. There has been no new division of marital assets here.
We share some of appellant's concerns regarding the trial court's failure to set forth a definitive termination date as to its award of spousal support to appellee, but not necessarily for the reasons he suggests. We do recognize, that the trial court's decision to award appellee $1,200 per month in spousal support may result in further litigation should either party request a modification of support based on a change in circumstances. For this reason, we repeat our directive in Griffith that a trial court should affirmatively indicate whether it considered a definite termination date for an award of spousal support and those factors it took into account in reaching its determination as to this issue. However, under the circumstances of this case, we cannot fault the trial court for failing to designate a definite termination date for the payment of spousal support.
In this case, other than indicating his preference to make a one-time, lump-sum, spousal support payment, appellant expressed fears over his ability to be a constant source of support based on his age, health, as well as his ability or willingness to continue working at his current rate of salary plus commission. The trial court indicated that based on the totality of the circumstances, which included appellant's concerns regarding his future income, that the better course of action was to retain jurisdiction to modify its award of spousal support should a change in the parties' circumstances occur. Based on the length of the parties' marriage, the vast disparity in the parties' incomes, and the apparent uncertainty over appellant's future income, we cannot conclude that the trial court "abused its discretion" in failing to set a definite termination date in its judgment entry for appellant's payment of spousal support to appellee.
Finally, in the last sentence of his brief to this court with respect to the first assignment of error, appellant asserts that his "rights to equal protection of the law, as guaranteed by the Ohio Constitution and the United States Constitution" have been violated. Appellant raises this "argument" for the first time on appeal and makes absolutely no attempt at describing how his constitutional rights were violated. App.R. 12(A) permits this court to disregard issues not argued in the briefs and appellant has not given us any reason why we should address this issue.
Appellant's first assignment of error is without merit.
In the second assignment of error, appellant argues that the trial court erred in ordering spousal support with no determination as to the "needs" of appellee.
In Houck v. Houck (Dec. 26, 1997), Trumbull App. No. 97-T-0025, unreported, at 7, this court noted that the applicable statutory provision governing spousal support, R.C. 3105.18, underwent a significant revision effective January 1, 1991. Among other changes, R.C. 3105.18(B), renumbered as R.C. 3105.18(C)(1), removed the term "necessary" and substituted the phrase "appropriate and reasonable" with respect to a court's determination of spousal support. Id. This section now reads as follows:
 "In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 (3105.17.1) of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
 "(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities:
 "(n) Any other factor that the court expressly finds to be relevant and equitable."
 In this case, it is evident from a review of its judgment entry that the trial court considered all of the foregoing factors in great detail in determining that a $1,200 spousal support award to appellee was both reasonable and appropriate in this case. We recognize that appellant presented evidence as to the "needs" of appellee and suggested that she sell her home, liquidate all of her assets, and live off the amount of money she earns as well as the income she could generate if she invested everything in high-powered mutual funds. Contrary to appellant's position, the trial court's opinion of May 8, 1998 did consider this "needs" evidence under the "catch-all" provision of R.C. 3105.18(C)(1)(n). It is apparent, however, that the trial court rejected this evidence and, again, we are unable to conclude that the trial court "abused its discretion" in not adopting appellant's approach to an evaluation of appellee's needs.
The trial court was not required to accept the type of alternative advocated by appellant in determining what is "reasonable and appropriate" including tenuous forecasts of the future status of the stock market. In this case, appellee was primarily responsible for caring for the parties' home and children while appellant worked at a job that provided the family with substantial income. This income enabled the parties to have, as the trial court determined, an above average standard of living. The trial court properly consider these facts, as well as others, in determining the level of support that was "reasonable and appropriate" in this case. Appellant's second assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.